THOMAS J. AYERS et al., Appellants, v. JOHN E. LATTIMER, Respondent.

St. Louis Court of Appeals, March 5, 1894.

Justices' Courts: JUSTICE DE FACTO. There can not be an officer *de facto,* where there is no office *de jure.* Accordingly, if a county court appoints a justice of the peace under a general law which had been repealed prior to the appointment, the appointee is not an officer *de facto* and a cause instituted before him may be dismissed on appeal from his judgment therein.

*Appeal from the Pike Circuit Court.*—HON. R. F. ROY, Judge.

AFFIRMED.

*Joseph Tapley* and *Clark & Dempsey* for appellants.

(1) The law under which Buchannan was appointed had not been repealed. See Session Acts of Missouri for 1881, page 154. In 1887 (Acts for that

year, page 206) the legislature amended section number 2803 of statute of 1879, page 471, entirely ignoring the act of 1881, *supra*. At the revising session in 1889 the act of 1887, *supra*, was amended and placed in the statute as section number 6090, page 1,448. See, in this connection, sections 6605 and 6607 of the Revised Statutes of 1889. *Curtwright v. Crow*, 44 Mo. App. 563; *Keating v. Hyde*, 23 Mo. App. 555; *State v. Daly*, 49 Mo. App. 184; *Negrotto v. City of Monett*, 49 Mo. App. 286; *Railroad v. Cass County*, 53 Mo. 17; *McVey v. McVey*, 51 Mo. 406. (2) If said law of 1881 had been repealed at the time of the appointment of said Buchannan, still the order of the county court appointing him gave him color of authority sufficient to bring him within the rule respecting officers *de facto*. Neither the county court nor the public were aware of any doubts existing, if there were any, as to the validity of the appointment. He served as a justice about two years, during which time he no doubt performed many official acts, which, if held void, will result in great inconvenience, loss and damage. He was not a usurper, and, not being such, his official acts ought to be held valid in order to protect the public. *Simpson v. McGonegal*, 52 Mo. App. 540; *Adams v. Lindell*, 5 Mo. App. 197; *Fleming v. Mulhall*, 9 Mo. App. 71; s. c., 72 Mo. 198.

*J. H. Blair* for respondent.

(1) The act of the legislature under which Buchannan was appointed was repealed prior to his appointment. (2) There can not be an officer *de facto* where there is no *de jure* office to fill. *Ex parte Snyder*, 64 Mo. 58; *State v. O'Brian*, 68 Mo. 153; *Jester v. Spurgeon*, 27 Mo. App. 477; *Daniel v. Hutcheson*, 22 S. W. Rep. 278; *Norton v. Shelby County*, 118 U. S. 425; *Hildreth v.*

*McIntire*, 1 J. J. Marsh. 206; *Strickland v. Griffin*, 70 Ga. 546; *State v. Duffel*, 32 La. Ann. 653; *In re Hinkle*, 31 Kan. 712.

ROMBAUER, P. J.—One John W. Buchannan, claiming to act as justice of the peace under an appointment from the county court of Pike county, entered a judgment against the defendant for $1.50. The defendant appealed to the circuit court, and there filed the following motion:

"Now at this day comes the defendant herein, and moves the court to dismiss this cause for the following reasons, to wit:

"Because John W. Buchannan, the pretended justice of the peace before whom this cause was instituted, was not a justice of the peace for Cuivre township, Pike county, state of Missouri, either *de jure* or *de facto*, and that all proceedings had before said pretended justice were and are absolutely void."

This motion the court sustained, and it dismissed the proceedings. The plaintiff appeals, and assigns for error this action of the court.

Upon the hearing of the motion to dismiss, the following facts were agreed upon:

"That John W. Buchannan was appointed and commissioned a justice of the peace by the county court of Pike county on the seventh day of November, A. D. 1890, under the act of March 23, 1881, entitling towns near medical springs to (an) additional justice of the peace, at page 154 of laws of 1881.

"That said Buchannan was at the time of his appointment, and ever since that time has been, a resident and citizen of the city of Bowling Green, in said county of Pike.

"That at the time of said appointment, and ever since said time, said city of Bowling Green contained

more than one hundred inhabitants, to wit, fifteen hundred and sixty-four inhabitants, and was situated within five hundred yards of certain medical springs called the Bebee springs, the waters of which were used for their curative or supposed curative effects.

"That said John W. Buchannan qualified as the law directs, and acted as such justice under and by virtue and authority of his said appointment, and was so acting at the time said cause was tried before him.

"That two other persons had been duly elected and qualified and were at the time of said appointment acting as justices of the peace within and for Cuivre township, the township in which said city of Bowling Green is and was situated."

The only question presented for our consideration is whether, under the facts thus stated and the applicatory law, said Buchannan was a justice of the peace either *de jure* or *de facto* when he undertook to render a judgment against the defendant.

Section 2803 of the Revised Statutes of 1879 provided that each municipal township, except as otherwise provided by law, should have two justices of the peace, and, in case there should be in such township an incorporated town or city having a population of over two thousand inhabitants, said town or city should be entitled to one additional justice. This section was amended in 1881 by adding to it a *proviso* that towns of one hundred inhabitants and more, which may contain any medical spring or springs, or which may be situated within five hundred yards of any such spring, shall be entitled to a justice of the peace in addition to the number which may be allowed by law to the township in which said town may be situated. The section as thus amended also provided that, upon the taking effect of the act, the county court of the county should appoint a justice of the peace for such town, who

should hold his office until the next general election, at which, and every four years thereafter, his successor was to be elected.

In March, 1887, the legislature again amended section 2803, *supra*, by providing how such section should read. The section as thus reenacted omitted the proviso contained in its amendment of 1881, and contained no reference whatever to such intermediate amendment. In 1889 the legislature again amended the section by qualifying it in many respects, such amended section being section 6090 of that revision. This section purports to be a revision of the entire law on that subject, contains no exception in favor of towns at or near medical springs, and contains this sweeping provision: "The persons, now holding the offices of justices of the peace in townships affected by this article shall continue to perform the duties of their respective offices *until the general election of 1890*, at which time one justice of the peace for each district, as herein provided, shall be elected, *after which time there shall be no other justices of the peace in townships affected by this act, except as herein provided for.*" The general election of 1890 took place on November 4, 1890.

It is not conceivable, how, under these circumstances, the county court of Pike county could, on the seventh day of November, 1890, appoint a justice of the peace under the act of 1881. Conceding, for argument's sake, that the amendment of 1887 was not a repeal by necessary implication of so much of the act of 1881 as provided for one additional justice of the peace in medical springs towns (a concession, which is not borne out by the views of the supreme court in *State ex rel. v. Miller*, 100 Mo. 439), it still remains self-evident that the revision of 1889, in which that whole section is reenacted with the clause above italicized, worked an express repeal of the act of 1881, and a discontinuance

of the office of these *extra* justices in 1892, if any still survived. Whatever may have been the pretense on part of the county court to appoint such an additional justice before the general election of 1890, the last vestige for a pretense to do so after that date was taken away by the revision of 1889.

The general rule unquestionably is that there can not be an officer *de facto*, where there is no office *de jure*. *Ex parte Snyder*, 64 Mo. 58; *State v. O'Brian*, 68 Mo. 153; *Jester v. Spurgeon*, 27 Mo. App. 477. There have been indeed cases where courts by a specious reasoning tried to establish an apparent limitation of this rule, because a contrary holding under the peculiar facts of the case would have produced a state bordering on anarchy (*Adams v. Lindell*, 5 Mo. App. 205); but to invoke such a limitation in the case at bar would be wholly unjustified. The office which Buchannan claimed to fill had been abolished in the most unmistakable terms in 1889, if not before, and the abolition of the office by act of the legislature was notice to all the world. *In re Hinkle*, 31 Kan. 712. The plaintiff was bound to know, when he instituted a suit before him, that no such office existed, and hence no such officer could exist. That fact was notorious. Buchannan's appointment by the county court could have conferred no higher authority upon him, than if he had first created the office and then appointed himself to fill it.

All the judges concurring, the judgment is affirmed.